UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

NORMAN FORD,

                    Defendant.

NO. CR-06-0083-EFS

**TENTATIVE ORDER GRANTING A NEW
TRIAL ON COUNT 1 AND SETTING
TRIAL**

     Hearings occurred in the above-captioned matter on February 5 and
26, 2009.  Defendant Norman Ford was present, represented by Peter
Schweda.  Jared Kimball appeared on the United States' behalf at the
first hearing, and Robert Ellis appeared on the United States' behalf at
the second hearing.  Before the Court were Defendant's Motion to Dismiss
Count 1 of the Superseding Indictment, or, in the Alternative for
Judgment of Acquittal (Ct. Rec. 401) and Defendant's Motion to Reconsider
Motion for New Trial (Ct. Rec. 400).  Also before the Court was the legal
question of whether a life imprisonment sentence is the mandatory minimum
for a felony murder conviction under 18 U.S.C. § 1111.  After reviewing
the submitted material and relevant authority and hearing from counsel,
the Court is fully informed.  As set forth below, the Court grants a new
trial on Count 1.

ORDER ~ 1

**A.    Background**

A criminal complaint was filed against Defendant on July 13, 2006. (Ct. Rec. 1.) Gerald Smith was appointed as defense counsel on July 19, 2006. (Ct. Rec. 18.)  On August 8, 2006, the Indictment (Ct. Rec. 24) was filed, charging Defendant with 1) Accessory After the Fact to Murder in the First Degree and 2) Burglary.

On March 6, 2007, the Government filed a Superseding Indictment (Ct. Rec. 73), which replaced the Accessory with Murder in the First Degree charge with first-degree felony (burglary) murder and added a firearms charge.  Defendant was arraigned on the Superseding Indictment on March 13, 2007.

Defendant sought leave to retain counsel on July 31, 2007, and on August 7, 2007, the Court permitted substitution of defense counsel Gerald Smith and continued the trial to allow newly-retained Mark Vovos time to prepare for trial.  Defendant declined a plea agreement offered by the Government to Counts 2 and 3, which would have recommended a binding thirteen-year sentence, and proceeded to trial on January 14, 2008.  On February 4, 2008, the jury found Defendant guilty of Counts 1 (felony murder) and 2 (first-degree burglary), and not guilty of Count 3 (use of a firearm in furtherance of a crime of violence).

Defendant filed the following post-trial motions on February 11, 2008: 1) Motion for Judgment of Acquittal Pursuant to Rules of Criminal Procedure 29(c) (Ct. Rec. 324) and 2) Motion Pursuant to Rule 33 of Criminal Procedure for a  New Trial (Ct. Rec. 325).  The Court denied Defendant's post-trial motions. (Ct. Rec. 365.)  While the parties were preparing for sentencing, it came to Defendant's attention that he may

face a mandatory life imprisonment sentence on Count 1. The Court granted Defendant's motion for appointment of new counsel and granted new counsel - Peter Schweda - time to familiarize himself with the file, file motions, and address sentencing issues. (Ct. Recs. 379 & 382.) On December 24, 2008, Defendant filed the instant motions before the Court to which the Government responded.

**B. Imprisonment Penalty for 18 U.S.C. § 1111 Felony Murder Conviction**

The Court ordered the parties to brief whether the Court must impose a life sentence for a felony murder conviction under 18 U.S.C. § 1111. Although Defendant recognizes that the statutory language calls for either death or life imprisonment for first-degree murder, Defendant contends that 1) the Court has discretion to deviate from a life sentence pursuant to 18 U.S.C. § 3553 and U.S. Sentencing Guidelines ("the Guidelines") § 2A1.1 and 2) a mandatory life imprisonment sentence for felony murder violates the Equal Protection Clause. The Government maintains that life imprisonment for felony murder is required by § 1111(b) and that such a sentence is consistent with § 3553, the Guidelines, and the Equal Protection Clause. As explained below, the Court concludes that it must sentence a defendant convicted of felony murder under 18 U.S.C. § 1111(a) to life imprisonment and that this sentence does not violate the Equal Protection Clause.

Section 1111 states:

> (a)  <u>Murder is the unlawful killing of a human being with malice aforethought</u>. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; *or committed in the perpetration of, or attempt to perpetrate*, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, *burglary*, or robbery; or perpetrated as part of a pattern or practice of assault or

torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, *is murder in the first degree*.

Any other murder is murder in the second degree.

(b) Within the special maritime and territorial jurisdiction of the United States,

Whoever is guilty of murder in the first degree *shall be punished by death or by imprisonment for life*;

18 U.S.C. § 1111 (underlining and italics added). Ninth Circuit case law clearly establishes that § 1111(b) mandates life imprisonment for first-degree murder. *United States v. LaFluer*, 971 F.2d 200 (9th Cir. 1991) However, the parties dispute whether a distinction should be made between first-degree premeditated murder and first-degree felony murder. Based on the statutory language and case law, the Court determines a distinction should not be made.

In *United States v. LaFleur*, the defendant was convicted of both premeditated murder and felony murder. *Id.* at 203-04. The Ninth Circuit analyzed whether § 1111(b) "mandates a life sentence without the possibility of release for defendants convicted of first degree murder." *Id.* at 207. After looking at § 1111, the sentencing statutes (18 U.S.C. §§ 3553 & 3581), and the Guidelines, the Ninth Circuit determined that the district court did not have discretion to impose a sentence other than life - "a defendant convicted of first degree murder under § 1111(a) must be sentenced to life in prison." *Id.* at 208. *See also United States v. Donley*, 878 F.2d 735 (3d Cir. 1989) (finding that § 1111 is not unconstitutionally vague - it imposes mandatory life imprisonment for first-degree murder); *but see United States v. Gonzales*, 922 F.2d 1044,

1051 (2d Cir. 1991) (noting that it was not addressing non-premeditated first-degree murder).

A conclusion that *LaFleur's* ruling applies to both first-degree premeditated murder and first-degree felony murder is supported by the 2007 Ninth Circuit decision, *United States v. Arcand*, 220 Fed. Appx. 508 (9th Cir. 2007) (unpublished opinion). *Arcand* involved a felony murder conviction based on the predicate felony of arson. The Ninth Circuit ruled that the district court "had no authority to depart downward from the statutory minimum of life imprisonment for first degree murder." *Id.* at 510. Judge Clifton in his concurrence disclosed his personal opinion that a mandatory life imprisonment sentence for the instant felony murder conviction was not justice. *Id.* at 511.

This conclusion - that a defendant guilty of § 1111(a) felony murder faces mandatory life imprisonment - is consistent with 18 U.S.C. § 3553 because the sentencing court's § 3553 sentencing analysis is limited by the applicable statutory minimum and maximum. *United States v. Lo*, 447 F.3d 1212, 1234 (9th Cir. 2006); *United States v. Booker*, 543 U.S. 220 (2005). Furthermore, Defendant's reliance upon Guideline § 2A1.1 is misplaced because the Guidelines adopt the statutory minimum as the Guidelines minimum. U.S.S.G. § 5C1.1(c)(2); *see United States v. Sands*, 968 F.2d 1058 (10th Cir. 1992) (recognizing that departure from § 1111(b)'s life imprisonment is not permitted under the Guidelines); *see also United States v. Williams*, 939 F.2d 721, 726 (9th Cir. 1991).

Lastly, based on *LaFleur*, the Court concludes that a mandatory life imprisonment sentence for all first-degree murders does not violate the Equal Protection Clause. "Because § 1111(b) neither classifies persons

by suspect classes nor classifies in such a way as to impair the exercise of a fundamental right, we apply the rational basis test [to an equal protection argument]." *LaFleur*, 952 F.2d at 213.  In *LaFleur*, the Ninth Circuit recognized that a mandatory life sentence for first-degree murder does not deny equal protection of the laws because there are rational reasons for Congress to impose different penalties on individuals guilty of first-degree murder as compared to those guilty of murder under 21 U.S.C. § 848(e).  *Id.* at 211-13.  Likewise, Congress rationally determined that a sentence of "any term of years or life" for a killing during a robbery or burglary to take a DEA controlled substance was appropriate.  18 U.S.C. § 2118.

In summary, when (and if) the Court sentences Defendant for felony murder under 18 U.S.C. § 1111(a), the Court must impose life imprisonment because § 3553 and the Guidelines are subject to § 1111(b)'s minimum and Congress rationally mandates life imprisonment for all first-degree murder convictions.

**C.   Defendant's Motion to Dismiss Count 1 of the Superseding Indictment, or, in the Alternative for Judgment of Acquittal**

Defendant contends the Court lacks subject matter jurisdiction to convict Defendant because a state burglary cannot serve as an 18 U.S.C. § 1111(a) predicate felony.  At the February 5, 2009 hearing, Defendant clarified that he is also arguing that the Court should have utilized state law to define Count 1 because felony (burglary of a residence) is not federally defined.  In the alternative, Defendant asks the Court to reconsider Defendant's motion for judgment of acquittal because no rational juror could have found § 1111(a)'s essential burglary element.

The Government opposes the motion, arguing that the Court has jurisdiction over Count 1, the Court properly instructed the jury on Count 1, and the jury's verdict was supported by the evidence. As explained below, the Court concludes it has jurisdiction over Count 1, but that the jury instructions failed to properly define felony (burglary of a residence) murder. Thus, a new trial on Count 1 - limited to aiding and abetting felony murder - is necessary.

The charges in this case required the Court to consider the Major Crimes Act, 18 U.S.C. § 1153, which is a "gap-filling" statute. *United States v. Pluff*, 253 F.3d 490, 493 (9th Cir. 2001).   The Major Crimes Act states in pertinent part:

> Any Indian who commits against the person or property of another Indian or another person any of the following offenses, namely, murder, . . . burglary, . . . within Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

18 U.S.C. § 1153(a).  Section 1153(b) then states:

> [a]ny offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

18 U.S.C. § 1153(b).  Section 1153 creates federal jurisdiction over the enumerated crimes if committed by an Indian in Indian country; however, § 1153 is not a substantive penal statute given that it does not define or punish the substantive crimes it lists. *United States v. Bear*, 932 F.2d 1279, 1281 (9th Cir. 1990), *abrogated in part on other grounds as recognized by United States v. Male Juvenile*, 280 F.3d 1008, 1018 (9th Cir. 2002).   What § 1153 does do, in addition to creating federal

jurisdiction over the enumerated crimes, is direct a court "where to turn in order to define and punish the criminal offenses over which the court has jurisdiction." *Bear*, 932 F.2d. at 1281.

Here, Defendant was charged with two (2) Major Crimes Act enumerated offenses: murder and burglary.  In regards to Count 1, the Superseding Indictment alleged:

> On or about June 1, 2006, in the Eastern District of Washington, within Indian Country, to-wit: within the external boundaries of the Spokane Indian Reservation and on trust land, the Defendant herein, Norman Ford, an Indian, with malice aforethought, did unlawfully kill Gary R. Flett, Jr. by shooting him with a firearm, in the perpetration of a burglary, in violation of 18 U.S.C. §§ 1111(a), 1153(a), and 2.

(Ct. Rec. 73.)  Section 1111(a) defines murder as "the unlawful killing of a human being with malice aforethought."  The statute then differentiates between first- and second-degree murder.  Per § 1111, first-degree murder includes felony (burglary) murder, i.e., "murder . . . committed in the perpetration of, or attempt to perpetrate, any . . . burglary . . . ."

Federal case law makes clear that for felony murder, murder's "malice aforethought" requirement is satisfied by proving intent to commit the predicate felony - here, burglary.  *United States v. Miguel*, 338 F.3d 995, 1006 (9th Cir. 2003); *see also United States v. Pearson*, 203 F.3d 1243, 1270 (10th Cir. 2000).  Accordingly, in order to prove felony (burglary) murder, the Government must prove the following occurred: an unlawful killing of a human being during the intended perpetration of, or attempt to perpetrate, a burglary.

Whether the Court properly instructed on Count 1 - felony (burglary of a residence) murder - is disputed.  Although there are federal

statutes criminalizing certain types of burglaries, there is no federal law that defines and punishes burglary of a residence - the predicate offensive conduct at issue here. *See United States v. Bear*, 932 F.2d 1279, 1281 (9th Cir. 1991). Therefore, because federal law does not define burglary of a residence, the Ninth Circuit directs courts to turn to state law to define burglary of a residence. *Male Juvenile*, 280 F.3d at 1021; *Bear*, 932 F.2d at 1281; *see also United States v. Norquay*, 905 F.2d 1157, 1158-59 (8th Cir. 1990). The Court so relied on Washington law to define burglary of a residence, concluding that jury instructions for both first-degree burglary and residential burglary as defined by Washington were appropriate. The Court abides by its decision to so instruct on burglary of a residence.

A closer question is whether the Court should have turned to Washington law to define federal (burglary of a residence) murder. After considering the Major Crimes Act, § 1111(a), and *Bear*[1], the Court concludes that both state and federal law should not be used to define a single § 1153 enumerated offense. Therefore, if a murder charge is predicated on a federally-undefined felony, state law must be used in its entirety to define, and punish, the felony murder.

The Court recognizes that § 1111(a) defines murder. Yet, in a felony murder charge, federal case law substitutes § 1111(a)'s "malice aforethought" requirement with proof that the defendant intended to commit the underlying predicate felony. Here, the predicate felony is burglary of a residence - an offense the Ninth Circuit recognizes is not federally defined. *Bear*, 932 F.2d at 1281. Accordingly, there is a

---

[1]  932 F.2d at 1281.

gap. Federal law does not define the *specific* offense charged. "Consequently, since the type of . . . [murder] [allegedly] committed by . . . [Defendant] is 'not defined and punished by Federal law in force within the exclusive jurisdiction of the United States,' . . . [Defendant's] offense must 'be defined and punished in accordance with the laws of the State in which such offense was committed.'" *Bear*, 932 F.2d at 1281 (quoting 18 U.S.C. § 1153(b)). Therefore, Washington law should be used to define and punish felony (burglary of a residence) murder.

The Court is reaching a different conclusion than the district court in *United States v. Narcia*, 776 F. Supp. 491, 495 (D. Ariz. 1991). The Arizona district court determined "the felony murder component of . . . [the felony (burglary of a residence] murder count] shall be defined by 18 U.S.C. § 1153(a), and the burglary component of . . . [the same count] shall be defined by state law." *Id.* This is similar to how the Court instructed the jury here - using state law to define burglary and then § 1111(a) to define felony murder's other requirements. However, upon further reflection of the Ninth Circuit's focus in *Bear* on whether the *specific* offense is defined by federal law, the Court concludes that federal law does not define felony (burglary of a residence) murder. Therefore, the Court should have utilized state law to define felony (burglary of a residence) murder, including utilizing RCW 9A.32.030(1)(c)'s felony murder "exception." *See also* 11 Wash. Prac. Crim. Jury Instr. 19.01. The Court's failure to so instruct prejudiced Defendant given that it is possible the jury may have found Defendant proved the felony murder "exception" under Washington law.

ORDER ~ 10

In summary, the Court has jurisdiction over Count 1 pursuant to the Major Crimes Act because murder is an enumerated § 1153 offense. *See Male Juvenile*, 280 F.3d at 1018. However, the Court concludes it must use state law to define felony (burglary of a residence) murder.

Alternatively, assuming the Court properly used both state and federal law to define felony (burglary of a residence) murder, the Court concludes the Count 1 instructions failed to set forth the required elements. The Government presented this case as both a) "straight-up" felony murder and b) aiding and abetting felony murder[2]. The Court initially denied Defendant's motion for a new trial based on an erroneous "straight-up" felony murder instruction (Third Revised Instruction No. 16) because:

> it is clear based on the not-guilty verdict on Count 3 that the jury concluded the evidence did not support a finding, beyond a reasonable doubt, that Defendant either used, brandished, or discharged a firearm. Accordingly, the jury could not find, beyond a reasonable doubt, that Defendant committed "straight-up" felony murder. Therefore, in order to reach a guilty verdict on Count 1, the jury must have found,

---

[2] Aiding and abetting liability under 18 U.S.C. § 2 is not specifically referenced by the Major Crimes Act. However, the Ninth Circuit recognizes that federal laws of general applicability apply to Indians and non-Indians, both within and outside of Indian country. *See United States v. Begay*, 42 F.3d 486, 497-500 (9th Cir. 1994); *see also United States v. Yankton*, 168 F.3d 1096, 1097-98 (8th Cir. 1999). Section 2 (aiding and abetting) is a statute of general applicability. Accordingly, the Government properly prosecuted Defendant under an aiding and abetting theory of liability.

ORDER ~ 11

beyond a reasonable doubt, that Defendant aided and abetted the felony murder.

(Ct. Rec. 365.)   The Court finds this earlier ruling erroneous because the Third Revised Instruction No. 16 did not require the Government to prove that Defendant was the killer; rather, it required the Government to prove that "[Mr. Flett's] death was caused by Defendant Norman Ford." (Ct. Rec. 313.)   The Court concludes the term "caused" is too broad and inappropriately allowed the jury to determine that Defendant need not be the killer - a requirement for "straight-up" felony murder.   The ambiguity created by the broad term "caused" was not clarified by the remainder of the instruction and, if anything, the last sentence added to the ambiguity: "It is sufficient if the Government proves beyond reasonable doubt that Defendant knowingly and intentionally committed burglary - either First-Degree Burglary or Residential Burglary-, and that the killing of Gary R. Flett, Jr. occurred during, and as a consequence of, Defendant's commission of the burglary." *Id.*   When the instruction is read in its entirety, the jury could have determined that Defendant's conduct of kicking in the door "caused" the murder by providing Joey Moses with access to the inside of the residence to kill Gary Flett.   Accordingly, Third Revised Instruction No. 16's failure to require the Government to prove that Defendant was the killer is a fatal defect in the "straight-up" felony murder instruction.

The Court recognizes that, if state law may be used to solely define burglary of a residence for purposes of felony murder, its initial Instruction No. 16 was legally correct.   However, when the Court was advised by the jury that "[w]ithout more clarification [on Instruction No. 16] we will not come to a conclusion" (Ct. Rec. 293), the Court

modified Instruction No. 16 in an attempt to eliminate jury confusion. *See United States v. Hayes*, 794 F.2d 1348, 1352 (9th Cir. 1986) ("[T]he district court has the responsibility to eliminate confusion when a jury asks for clarification of a particular issue.")  Accordingly, Defendant was clearly prejudiced by the Court's modifications to Instruction No. 16 given that the jury would have been unable to reach a decision on Count 1.

The erroneous "straight-up" felony murder instruction (Instruction No. 16) was compounded by a legally-deficient aiding and abetting instruction (Instruction No. 17).  (Ct. Rec. 278.)  Instruction No. 17 required the jury to find that Defendant aided in the commission of Murder in the First Degree, but failed to require the jury to find that Defendant aided in the burglary.  To aid and abet felony (burglary) murder, the jury needed to find that Defendant aided Joey Moses in committing both murder *and* burglary.  *See United States v. Parks*, 411 F. Supp. 2d 846, 857-58 (S.D. Ohio 2005).  The jury's guilty finding on Count 2 (first-degree burglary) does not remedy Instruction No. 17's failure to require the jury to find Defendant aided Mr. Moses' commission of burglary because Count 2 asked the jury to find that *Defendant* committed burglary, not that he knowingly and intentionally *aided Mr. Moses* in committing burglary.

Accordingly, given the defects in both felony murder instructions, the Court concludes the jury's guilty verdict on Count 1 cannot stand, and a new trial is required on Count 1.  Defendant's motion is granted and denied in part: Count 1 is not dismissed and a judgment of acquittal will not be entered; however, a new trial on Count 1 - limited to aiding and abetting felony murder - will be held.

**D.    Defendant's Motion to Reconsider Motion for New Trial**

Defendant asks the Court to reconsider its Order denying a new trial because his Sixth and Fourteenth Amendment rights to be informed about Count 1's nature and cause were violated.    The Government contends Defendant has not demonstrated that the interests of justice require a new trial on the record because Defendant was apprised of the nature and cause of the accusations in satisfaction of the law.[3]    The Court initially denied Defendant's reconsideration motion at the February 5, 2009 hearing; however, upon further reflection of the authority and facts of this case, the Court finds that the interests of justice require a new trial because Defendant was not correctly advised by either the Court or defense counsel about the mandatory life imprisonment sentence he faced if convicted of Count 1 - felony (burglary of a residence) murder.

Federal Rule of Criminal Procedure 33 provides:

(a) Defendant's Motion.    Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. . . .

(b) Time to File.
    (1)    Newly Discovered Evidence.    Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. . . .
    (2)    Other Grounds.    Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty.

Defendant claims he discovered in August 2008 that his Sixth and Fourteenth Amendment rights were violated.    Accordingly, Defendant

---

[3]    The Government waives any objection to the timeliness of Defendant's motion.

appears to contend that his motion for new trial is timely based on newly discovered evidence in August 2008.

The Sixth Amendment states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be *informed of the nature and cause of the accusation*; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

(Emphasis added.)   The Fourteenth Amendment's due process clause also requires that a defendant receive notice as to the nature of the charges against him.  *United States v. Minore*, 292 F.3d 1109, 1115 (9th Cir. 2002).  "'[R]eal notice of the true nature of the charge against [a defendant is] the first and most universally recognized requirement of due process.'" *Bousely v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).

There is no question that the Superseding Indictment fairly informed Defendant that he was being charged with murder.  The Superseding Indictment did not specifically advise Defendant as to the penalty he faced if convicted of felony murder.  Yet, it did refer to 18 U.S.C. § 1111(a), which defines first-degree murder.

The penalty slip (Ct. Rec. 75), the Assistant United States Attorney's comments at the arraignment, and the magistrate judge's comments at the arraignment also provided Defendant with information about Count 1's penalties.  This information, neither individually nor cumulatively, provided Defendant with clear and correct notice as to the potential penalty on Count 1.

ORDER ~ 15

The penalty slip provision, which is prepared by the Government, stated: "CAG death or imprisonment for life; and/or up to $125,000 fine; not more than 5 years supervised release; a $100 special penalty assessment."  (Ct. Rec. 75.)  The penalty slip failed to clearly identify that life imprisonment is the mandatory minimum, especially since it mentioned supervised release.

At the March 13, 2007 arraignment, both the AUSA and the magistrate judge discussed Count 1's penalties.  The AUSA stated:

> Under the Code, Your Honor, the defendant is subject to death or imprisonment for life and/or up to a $125,000 fine on Count 1, not more than – strike that – well, normally, the five years of supervised release and a $100 special penalty.

(Ct. Rec. 400 pp. 9-10.)  Although the AUSA referenced life imprisonment, this comment was quickly followed by a supervised release discussion.  Accordingly, it was reasonable for Defendant to believe that life imprisonment was the maximum penalty - not also the minimum penalty.  The reasonableness of this belief was then bolstered by the magistrate judge's comments:

> As you heard [the AUSA] explain, Count 1, under the statute, carries the possibility of a death penalty or up to imprisonment for life.  You are not to be subjected to that aspect of the statute that permits the death penalty as the proper opting-in notice is not going to incur, and there will be a filed statement of intent in that regard – up to a $125,000 fine, and up to five years of court supervision, plus a mandatory assessment of $100 as to Count 1.

*Id.* p. 12.  Not only did the magistrate judge not inform Defendant that life imprisonment was mandatory, but the magistrate judge also referenced supervised release.

This Court did not have the occasion to advise Defendant as to the penalties he was facing on Count 1 because no change of plea hearing was held.  Although Defendant was offered a plea agreement, this agreement

did not set forth Count 1's penalties because it was a plea agreement to Counts 2 and 3.

The Government provided both defense counsel - Mr. Smith and Mr. Vovos - with a letter indicating that life imprisonment was Count 1's mandatory minimum imprisonment sentence.  Mr. Vovos states that he shared this letter with Defendant; however, he also shared that the letter's mandatory life imprisonment assertion was erroneous and advised Defendant that the Court had the discretion to depart downward if Defendant did not intend the killing.  (Ct. Rec. 423.)  Defendant submitted a personal declaration stating that he was told he faced "'up to' [a] life sentence" on Count 1.  (Ct. Rec. 403 p. 2.)  Further, Defendant declared "I never understood nor was I informed by the Court or the United States Attorney that the penalty for First Degree Murder was a mandatory life sentence." *Id.*

Based upon the above events, and viewing the entire proceeding in its entirety, the Court concludes that Defendant's Sixth and Fourteenth Amendment rights to be informed of the true nature of Count 1 were violated - he did not discover this violation until August 2008.  The Court recognizes that the Federal Rules of Criminal Procedure were not violated because the magistrate judge complied with Rule 10's arraignment requirements: 1) ensure that Defendant had a copy of the indictment, 2) state the substance of the charges, and 3) ask Defendant to plead to the indictment.  Because Defendant entered a not-guilty plea, Rule 11(b)'s requirements did not apply.  Fed. R. Crim. P. 11(b)(1)(H) ("any maximum possible penalty, including imprisonment, fine, and term of supervised release") & I ("any mandatory minimum penalty"); *see United States v. Jasper*, 481 F.2d 976 (3d Cir. 1973) (invalidating guilty plea because

ORDER ~ 17

misinformed as to penalties). Nonetheless, Defendant has a constitutional right to be correctly informed about Count 1's mandatory minimum life imprisonment penalty. This right is similar to that enjoyed by a Defendant when pleading guilty or when waiving the right to counsel. *Id.*; *United States v. Forrester*, 512 F.3d 500, 508-09 (9th Cir. 2008) (recognizing that a defendant's decision to waive the right to counsel is open to attack if the defendant did not know the minimum and maximum penalties); *United States v. Stubbs*, 279 F.3d 402, 411 n.4 (6th Cir. 2002). The incorrect information provided to Defendant at arraignment, along with defense counsel's failure[4] to correct this information,

---

[4] A reasonably prudent attorney would have conducted legal research to ascertain Count 1's applicable penalty. *See Washington v. Watkins*, 655 F.2d 1346, 1357 (5th Cir. 1981) ("While neither in capital nor noncapital cases is a defendant entitled to perfect or error-free representation, the number, nature, and seriousness of the charges against the defendant are all part of the 'totality of the circumstances in the entire record' that must be considered in the effective assistance calculus, just as are the strength of the prosecution's case and the strength and complexity of the defendant's possible defenses."). Legal research would have identified that the Ninth Circuit and other federal case law make clear that life imprisonment is mandatory for felony murder. *See United States v. Arcand*, 220 Fed. Appx. 508 (9th Cir. 2007). Because Mr. Vovos failed to appreciate that life imprisonment was mandatory for Count 1, he provided Defendant with ineffective assistance upon which Defendant based his decision to reject the plea agreement and

ORDER ~ 18

resulted in Defendant not being advised about Count 1's mandatory life imprisonment sentence.[5] Defendant did not learn that life imprisonment was Count 1's minimum sentence until August 2008. Accordingly, the facts supporting Defendant's motion for new a trial were not within Defendant's knowledge at the time of trial.

The Court recognizes that the Ninth Circuit has limited the ability of a defendant to seek a new trial under Rule 33 based on ineffective assistance of counsel. *See United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997); *United States v. Hanoum*, 33 F.3d 1128, 1130-31 (9th Cir. 1994). However, the Court finds this case presents a rare circumstance where the record is sufficiently developed to permit determination of the issue. In addition, this is not a case where Defendant is arguing that trial counsel failed to prepare for trial, call a particular witness, or seek exclusion of particular evidence; rather, Defendant was unaware of the mandatory life imprisonment sentence he faced if convicted of Count 1 until after trial was held. Therefore, Defendant's ability to make

proceed to trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990).

[5] The Court's ruling that felony (burglary of a residence) murder must be defined, and therefore punished, by state law does not alter the fact that Defendant was not provided notice that he was facing a mandatory life sentence if convicted of Count 1. This is because Defendant is also facing mandatory life imprisonment if convicted of felony (burglary in the first degree) murder under Washington law. RCW 9A.32.040 & 9A.32.040.

informed tactical pretrial and trial decisions was substantially impaired. For these reasons, the Court finds Defendant's motion for a new trial is timely and that his Sixth and Fourteenth Amendment rights were violated because Defendant based his decision to proceed to trial on incorrect information regarding Count 1's statutory minimum.[6]

**E.   Conclusion**

For the above-given reasons, **IT IS HEREBY ORDERED:**

1.  Defendant's Motion to Dismiss Count 1 of the Superseding Indictment, or, in the Alternative for Judgment of Acquittal **(Ct. Rec. 401)** is **GRANTED** (new trial on Count 1) **AND DENIED** (Count 1 not dismissed and judgment of acquittal not entered).

2.  Defendant's Motion to Reconsider Motion for New Trial **(Ct. Rec. 400),** which was previously orally denied, is **GRANTED.**

3.  The jury's guilty verdict on <u>Count 1</u> **(Ct. Rec. 318)** is **VACATED.**

4.  A pretrial conference is set for **March 27, 2009, at 8:30 a.m. in Spokane, Washington.** A second pretrial conference is set for **April 29, 2009, at 1:30 p.m. in Spokane, Washington.**

5.  Trial briefs, requested voir dire, and **joint** proposed jury instructions - limited to Count 1 (aiding and abetting felony murder) shall be filed and served **NO LATER THAN April 24, 2009.**

---

[6]   The Court recognizes that if Instruction No. 16 had not been modified the issue regarding whether Defendant's Sixth and Fourteenth Amendment rights to be informed of the true nature of Count 1 were violated would not have come to fruition. This is because the jury's note clearly advised that it would be unable to reach a unanimous decision on Count 1. (Ct. Rec. 293.)

ORDER ~ 20

a.   Trial briefs shall not exceed twenty (20) pages without prior court approval.  LR 39.1.  To obtain court approval, a party must file a motion to file an overlength brief, demonstrating good cause why supplemental briefing is necessary.

b.   Requested voir dire shall not duplicate information elicited in the Clerk's Office Jury Questionnaire ("COJQ") and the Court's seven-question sheet, which the jurors will answer orally in open court during voir dire, *see* previously-filed Court's Criminal Jury Trial Procedures Letter.  Any questions in addition to those in the COJQ that counsel suggest should be sent pretrial to the entire jury panel must be filed no later than four weeks before trial.

c.   Jury instructions.  The court is inclined to reuse Jury Instruction Nos. 1-11, 13-14, and 24-33.  Proposed jury instructions shall be in addition to or in lieu of these identified instructions.  In particular, each party shall submit the following proposed jury instructions: (1) elemental instruction for aiding and abetting felony burglary of a residence murder and (2) an information instruction advising the jury that a prior trial was held and/or that Defendant was previously found guilty of Count 2 and not guilty of Count 3.  Parties shall also submit a proposed verdict form.

6.  The **jury trial on Count 1** - limited to aiding and abetting felony murder - is set for **May 4, 2009, at 9:00 a.m.** in **Spokane,**

Washington.  **Counsel shall meet with the Court in Chambers at 8:15 a.m. on the day of trial.  Any motions unaddressed at the pretrial conference shall be heard in open court on the day of trial at 8:30 a.m., at which time Defendant shall be present.**

7.    Sentencing is set on **Count 2 on July 9, 2009, at 10:30 a.m. in SPOKANE.**  Sentencing memoranda and material shall be filed by **June 15, 2009.**

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and to provide copies to counsel.

**DATED** this 24th    day of March, 2009.


                    s/Edward F. Shea
                    EDWARD F. SHEA
            United States District Judge

Q:\Criminal\2006\0083.posttrial.wpd

ORDER ~ 22